1 | STEPHEN YAGMAN (SBN 69737)
filing@yagmanlaw.net
2 | (for filings only)
YAGMAN + REICHMANN, LLP
3 | 333 Washington Boulevard
Venice Beach, California 90292-5152
4 | (310) 452-3200

5 | Attorneys for Plaintiff & Putative
Class Members

6 |

7 |

8 |

9 | **UNITED STATES DISTRICT COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA**

11 | **WESTERN DIVISION**

12 | **KORRELL COLE**, | 2:23-cv-10392-SB(PDx)

13 | Plaintiff,

14 | v. | **SECOND AMENDED COMPLAINT**
(pursuant to 10/28/24 order)

15 | **ROBERT LUNA, KATHRYN
BARGER, HOLLY MITCHELL,**
16 | **JANICE HAHN, HILDA SOLIS,** | **CLASS ACTION ALLEGATIONS**
**LINDSEY HORVATH, DEPUTY**
17 | **SHERIFF PALENCIA, DEPUTY** | **DEMAND FOR JURY TRIAL**
**SHERIFF PINEDA, DEPUTY**
18 | **SHERIFF PALACIOS, DEPUTY**
**SHERIFF MARTINEZ,**
19 | **SERGEANT STELTER,** and **10**
**UNKNOWN, NAMED**
20 | **DEFENDANTS,** | Judge Stanley Blumenfeld, Jr.

21 | Defendants.

22 |

23 | Plaintiff makes the following allegations in support of the this amended

24 | complaint:

25 |

26 | //

27 | //

28 | //

1

## JURISDICTION AND VENUE

1. Plaintiff, **KORRELL COLE**, is a Black person who asserts his federal claims, pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3) and subject matter jurisdiction lies pursuant to 28 U.S.C. § 1331 of these federal claims.

2. The matters that are the bases for this action occurred in Los Angeles County, California, and in the City of Los Angeles, and therefore venue lies in the United States District Court for the Central District of California, and in its Western Division, pursuant to 28 U.S.C. § 1391.

## THE PARTIES

3. Plaintiff is a person who has been subject to Los Angeles Sheriff Department ("LASD") police brutality and thuggery, and defendants are Los Angeles County Sheriff **ROBERT LUNA,** in both his individual and official capacities, Supervisors **KATHRYN BARGER, HOLLY MITCHELL, JANICE HAHN, HILDA SOLIS,** and **LINDSEY HORVATH,** in their official capacities only, **DEPUTY SHERIFF PALENCIA, DEPUTY SHERIFF PINEDA, DEPUTY SHERIFF PALACIOS, DEPUTY SHERIFF MARTINEZ, SERGEANT STELTER,** in their individual capacities only, and **10 UNKNOWN, NAMED DEFENDANTS**.

4. Defendants, each and all are sued in *both* their individual and official capacities, but only in their official capacities for the claims made under *Monell v. Dep't of Soc. Svcs. of the City of New York*, 436 U.S. 657 (1978), with respect to which defendants are sued only in their official capacities.

5. Plaintiff is a person who was both a pre-trial detainee and a convicted person who was been brutalized and subjected to thuggery and subjected to constitutional violations at the hands of defendants.

2

6.  Defendants and each of them played some material role in the acts and/or omissions alleged hereinbelow and in the setting of policies and customs of the LASD, and their unconstitutional policies, practices, procedures, and customs were the moving forces behind the constitutional violations inflicted on plaintiff.

## ALLEGATIONS COMMON TO EACH COUNT

7.  Each and every allegation set forth in each and every averment herein is incorporated by this reference in each and every other averment and allegation of this pleading.

8.  All acts and/or omissions perpetrated and/or engaged in by each defendant, in their individual capacities, were louche, and done maliciously, callously, oppressively, wantonly, recklessly, with deliberate indifference to the rights allegedly violated, despicably, with evil motive, and/or intent, in disregard of the clearly-established rights of plaintiff, and in clear violation of the federal Constitution and of the California Constitution, and of controlling federal law, both statutory and common law, as set forth by both the United States Supreme Court and the United States Court of Appeals for the Ninth Circuit.

9. Defendant Deputy Palencia worked at Works Module 3700 of the Mens' Central Jail.

10. Defendant Watch Commander Unknown Named Defendant/John Doe #1 worked the Jail as a jailer lieutenant, over Module 3700 "EM" Shift Jail Division, and was responsible for the tracking, supervision, and conduct of deputies in jail.

11. Defendant Deputy Pineda worked at Works Module 3700 of the Jail, as a Training Officer Deputy Jailer.

12. Defendant Deputy Palacios worked at Works Module 3700 at the Jail, as a Training Officer Deputy Jailer.

3

1        13. Sergeant Stelter #53134 worked at Works Module 3700 at the Jail as a

2 Sergeant, employee of Defendant County.

3        14. These deputy defendants unlawfully used excessive force against

4 plaintiff and assaulted, battered, harassed, and retaliated against him for utilizing

5 the complaint/grievance process, and this action also is against the Los Angeles

6 County Sheriff, defendant Robert Luna, as the supervisory officer responsible for

7 the conduct of defendants, and for his failure to take corrective action with respect

8 to Sheriff personnel whose vicious propensities were notorious, to assure proper

9 training and supervision of the personnel, and to implement meaningful

10 procedures to discourage lawless official conduct.  This action is brought pursuant

11 to 42 U.S.C. §§ 1983, and the First, Eighth, and Fourteenth Amendments to the

12 Constitution of the United States.

13        15. At the time of the wrongful conduct alleged herein, the plaintiff was

14 both a pretrial detainee and a convicted person who was in the custody of the Los

15 Angeles County Sheriff's Department and was confined in the Los Angeles

16 County Men's Jail ("the Jail"), which is an antiquated, medieval-like, 65-year-old,[1]

17 hell-hole, operated by both defendants Luna and supervisors Barger, Hahn, Solis,

18 Mitchell, and Horvath, all of whom both refuse to remedy all of its constitutional

19 deficiencies and refuse to shutter it. *See* "Men's Central Jail faces 'severe structural

20 damage' in earthquake, report says," Los Angeles Times, Aug. 27, 2024, and other

21 Times articles attached hereto as Exhibit 2, and all of whose contents are

22 incorporated herein by this reference.

23

24        16. At approximately 10:10 p.m. on September 14, 2023, at the Los Angeles

25 County Men's Jail, plaintiff was escorted by Defendant Palencia from the library

26 in Module 1750 to Module 3700-Denver Row.

27

28 [1] *See* Wikipedia article on Men's Central Jail, attached hereto as Exhibit 3, and
whose contents hereby are incorporated herein by this reference.

17. After arriving at 3700-Denver Row, plaintiff changed the channel on the television, and then asked Defendant Palencia if he could get his previously-authorized daily shower and grievances.

18. Defendant Palencia suddenly became aggressive and approached plaintiff in a physically threatening manner and mumbled something to the effect of "keep filing grievances and I'll call and see what happens to you."

19. Then defendant Palencia ordered plaintiff to turn around, to be handcuffed. Plaintiff complied, without any resistance.

20. Defendant Palencia placed handcuffs on plaintiff's wrists, then maliciously adjusted the handcuffs around his wrists excessively tightly, causing plaintiff to suffer from extreme pain, discomfort, and to cut off circulation.

21. Plaintiff complained that the handcuffs were too tight.

22. Defendant Palencia ignored him.

23. Defendant Palencia took hold of plaintiff's arm from behind and escorted plaintiff down a passageway and to the top of a steep, wet, unlit stairwell.

24. Unprovoked and without warning, Defendant Palencia maliciously wrenched plaintiff's restrained arm and forcibly heaved plaintiff forward, and intentionally caused plaintiff to lose his footing and to plunge headfirst down the stair case.

25. Defendant Palencia did not make any effort towards helping prevent plaintiff from falling down the stairwell.

26. By doing this, Palencia violated departmental policies and procedures.

27. Defendant Palencia and his partner Martinez, just stood at the top of the stairwell for moments and laughed, after Palencia deliberately pushed the restrained plaintiff down a flight of stairs, nearly killing plaintiff, via a broken neck or deadly blow to the head. Then defendant Palencia struck plaintiff in the chest.

28. Defendant Palencia and his partner Martinez stole plaintiff's plastic bag of legal paperwork and never returned it.

29. After the deadly incident, plaintiff was placed on a gurney by the Los Angeles Fire Department and rushed to the hospital in an ambulance.

30. Defendant Palencia's use of excessive and deadly force on the unresisting plaintiff left plaintiff hospitalized, wearing a neck brace, and temporarily paralyzed from the waist down.

31. Defendants Training Officers Pineda and Palacios of Module 3700 are directly responsible for failing properly to train trainee Palencia.

32. On 9/16/2023, at the 3700-Denver row, grievance receptacle, at approximately 9:28 am, plaintiff filed grievances against defendant Palencia for retaliation, excessive force, and racially-motivated mistreatment, and this was done in full view of surveillance video cameras. Plaintiff never received a response to his grievances. (Exhibit A, to original complaint, Doc. 1).

33. On 10/1/2023, plaintiff filed an appeal for the Sheriff's failure to properly process and investigate his grievances against staff member Palencia, *et al.*, within the 15-day time limit mandated on the grievance form. The appeal also was ignored by jail supervisors. Plaintiff's grievances are regularly mishandled by jail supervisors.

34. Over a time span of about eight months, plaintiff filed multiple personnel complaints/grievances against Defendant Palencia, for staff misconduct and dereliction of duty, which defendant Palencia was embroiled in pending complaints against him by Plaintiff and other detainees. (*See* Exhibit A)

35. On 9/10/2023, 3000-Floor defendant Sergeant Stelter approached plaintiff's cell with multiple written complaints in his hand against defendant Palencia, for misconduct.

1

2

3

4

36. Defendant Sgt. Stelter only briefly questioned plaintiff and other detainees about the grievances, but Stelter never actually processed the complaints, provided  any reference numbers so that the complaints could be tracked in any database.

5

6

37. This included the grievance in which plaintiff expressed he feared for his safety as to Palencia.

7

8

9

38. None of the grievances plaintiff filed against defendant Palencia ever were properly processed and investigated. Yet, defendant Palencia seemed to be well-aware that plaintiff was complaining about his behavior.

10

11

12

13

39. On September 7, 2023, defendant Palencia approached plaintiff in a physically threatening and menacing manner, and threatened to deploy excessive force against plaintiff, exclaiming: "I'll cuff you up, then fuck you up."

14

15

16

17

18

40. When Plaintiff responded "What's wrong with you, dude?", defendant Palencia replied "Nobody gives a fuck about your grievances. On google, it said you're never going home anyway. You shot at a white officer idiot. See! Black Lives *Don't* Matter!", as he walked away down the tier, apparently already aware of the grievances filed against him.

19

20

21

41. Plaintiff was convicted and sentenced in 2022, and at the time of the incidents alleged herein he was detained in Los Angeles County jail, on unrelated non-violent charges, as both a convicted person and as a pre-trial detainee.

22

23

24

25

26

27

42. The incident in aver. 40, made plaintiff afraid to continue filing grievances and had a chilling effect on the exercise of plaintiff's rights to petition the government for a redress of grievances, which is protected conduct. But filing grievances was plaintiff's only way to document the fact that defendant Palencia continued to engage in various retaliatory actions against plaintiff, as a result of him filing grievances. This was a tragic irony.

28

43. The Jail grievance process is unavailable and futile.

44. The Jail staff ignore grievances and threaten to retaliate for filing them.

45. This is the custom.

46. Plaintiff filed grievances but defendants refused to respond to his grievances or properly to process and investigate his grievances. There exist copies of complaints filed and grievances were filed on video camera.

47. After plaintiff requested responses to his grievances, he on-goingly was subjected to repeated threats of retaliation and violence against plaintiff and his relatives for filing grievances.

48. On September 9, 2023, Defendant Palencia maliciously deactivated plaintiff's telephone account, so that he couldn't communicate with the outside world and his legal team, then ignored multiple detainees needing medical attention for hours and unleashed a profanity-laced tirade over the module loudspeaker, screaming: "3k Boys! We are the hardest gang here!" Meaning "3000 Boys," a Sheriff's Deputy Gang originating on the 3000 floor, where this occurred. A grievance was filed. (*See* Exhibit A to original complaint, Doc. 1).

49. Defendant Palencia is a self-proclaimed deputy gang member, who is part of a sheriff's deputy gang called "the 3000 Boys."

50. Defendant Stelter reviewed all of these grievances on 9/10/2023, and failed to do anything whatsoever to protect plaintiff's safety.

51. Instead, there was yet more retaliation ensued.

52. Stelter could've prevented all of this, but he refused to take away any action to prevent harm.

53. By having personal knowledge of defendant Palencia's illegal actions, failing to correct that misconduct, and encouraging the continuation of the misconduct, defendant Stelter also violated plaintiff's rights under Fourth and Eighth Amendments to the Constitution and caused plaintiff pain, suffering, physical injury, and emotional distress.

54. Plaintiff was on-goingly subjected to a retaliatory campaign of harassment by numerous 2000/3000/1750 Floor deputies (gang members and gang associates) who repeatedly used threats, intimidation, lies, and coercion to try to dissuade plaintiff from prosecuting personnel complaints/grievances and civil actions, even going so far as to try to get plaintiff to distort the truth and change his version of the events.

55. The key participants of the campaign of retaliation include, but not limited to, the following deputies,: Module 3700 deputies Paz, Training officer Pineda, Palencia, Training Officer Palacios, Training Officer Blake, Sergeant Fernandez, Clara Shortridge Foltz, Court House Sergeant M. Fernandez, Legal Unit Sergeant Michael Larsou, Custody Assistant Donald Hinton, Sergeant Stelter, Sergeant Duck-Worton,, Sergeant Floes, Sergeant Rickell, Lt. Guardman, Custody assistant Gutierrez, Sergeant Bueno Cortez, Sergeant Miranda, Sergeant Cliver, 3700 Training Officer Masuda, Training Officer Hernandez, Duniser, Barrientos, Ibarra, C/A Pineda, Deputy Hernandez working on 9/14/23 at 11:00 pm, Huddleston Ramirez, Rondox, Mendez, Legal Unit Kennedy, Captain Walker, Lt. Montoya, Olivares 3300 Hernandez Sergeant Estrada, Aldama Johnson, Lefevre Salenpour, other Paz, Valle, Horn, all 3000 Floor Sergeants, Ramirez, *etc*. Franco, Lineali, Barragan, Wright, Podroza, Zepeda, Zamorea, Harrisdon, Rouderos, Cisneros, Hennessey, Capacata, Sgt. Gutierrez, Garcia, 1750 Hernandez.

56. The actions described above were committed by the defendants in full view of surveillance cameras.

57. After the aforementioned retaliatory use of force against plaintiff, defendant Palencia, on 9/15/23, maliciously and without true facts, went before a sergeant of Los Angeles County Sheriff's Department, and charged plaintiff with a false disciplinary action and wrote a false report claiming the incident was plaintiff's fault, and not the defendant Palencia's fault.

58. The aforesaid disciplinary action was terminated in favor of plaintiff, but with no discipline given by the Sergeant.

59. As a result of the misconduct hereinbefore described, plaintiff experiences humiliation, emotional distress, pain, and suffering, and was otherwise damaged. He was also severely physically injured as a result of conduct alleged.

60. The abuse to which plaintiff was subjected was inflicted as the result of and was caused by the institutionalized practice of the Los Angeles County Sheriff's Department, which was known to, and ratified by Defendants: Los Angeles County Sheriff's Department, defendant Luna, and the County, with the defendants having at no time taken any effective action to prevent LASD personnel from continuing to engage in such abhorrent misconduct.

61. Defendant Luna had prior notice of the vicious propensities of his deputies and defendant deputies, but took no steps to train them, correct their abuse of authority, or to discourage their unlawful use of authority. The failure to properly train defendants included the failure to instruct them in applicable provisions of the U.S. Constitution and the California State Penal Code and with proper and prudent use of force.

62. Defendant Luna, who has been Los Angeles County Sheriff since Dec. 5, 2022, and who before that was City of Long Beach Police Chief from 2014-2021, who thus was a very-experienced chief law enforcement officer, to-date of over 10 years' experience, and the supervisor defendants, all ratified, condoned, approved of, acquiesced in, authorized, tolerated, and were the moving forces behind the institutionalized practices, and all of the misconduct hereinbefore detailed, by:

a. Failure to properly discipline, restrict, and control employees, including defendants Palencia, Pineda, Palacios, and Martinez, and the other deputies whose names are set forth in aver. 55;

b. Failing to take adequate precautions in the hiring, promoting, and retention of police personnel, including deputies listed in a;

c. Failing to forward to the office of the District Attorney of Los Angeles County evidence of criminal acts committed by Sheriff personnel;

d. Failing to establish and/or assure the functioning of a bona fide and meaningful departmental system for dealing with complaints/grievances of police misconduct, but instead failing to respond to such complaints, or responding to such complaints with mis-used bureaucratic power and official denials calculated to mislead the public. This conduct constitutes gross negligence under state law;

e. Failing to remedy the unconstitutional conditions of confinement at the Jail; and,

f. Failing to demolish the Jail.

63. As a consequence of the abuse of authority detailed above, plaintiff sustained damages hereinbefore alleged.

64. Los Angeles County Deputies repeatedly interfered with plaintiff's civil rights by threats, intimidation, and coercion against plaintiff and his family members, after he filed grievances and court documents against them. Plaintiff is in genuine fear for his life of deputy sheriff gang members and their associates, who engage in deputy gang violence against arrestees.

65. The plaintiff in this action, during his imprisonment in the Jail suffered from and was injured by unconstitutional and intolerably bad conditions at the Los Angeles County Men's Central Jail, and they included, *inter alia*, the following:

66. The Los Angeles County Sheriff Department has and fosters customs of denial of the right to petition government, by refusing to process inmate grievances, in violation of the First Amendment, and of the use of excessive force by its deputies, in violation of the Fourth Amendment, and of unconstitutional conditions of confinement, in violation of both the Eighth Amendment cruel and unusual punishment clause (for convicted detainees) and the Fourteenth Amendment due process clause (for pre-trial detainees).

67. The custom of use of excessive force includes, for example, uses of excessive force against the following persons: Enzo Escalante (March 10, 2021, in custody), Christopher Francis (Sept. 22, 2023 and April 18, 2024, in custody), Korrell Cole (Sept. 24, 2023, in custody), Jesus Medina (May 24, 2020, not in custody).

68. The custom of unconstitutional conditions of confinement includes infliction on the following prisoners: James Boyd (2019-present), Korrell Cole (2022-2023), Christopher Francis (2023-present), Jesus Medina (2023-2024), and Enzo Escalante (2021-2023).

## COUNT ONE
(Against All Defendants, 42 U.S.C. § 1983)

69. Plaintiff realleges specifically the allegations set forth in above averments, and, by virtue thereof, all defendants are liable to plaintiff, pursuant to 42 U.S.C. § 1983, for violation of plaintiff's First, Fourth, Eighth, and Fourteenth Amendment rights, to be able to petition government, not to be subjected to unreasonable searches, seizures, stops, arrests, and excessive force, not to be subjected to cruel and unusual punishments and to unconstitutional conditions of confinement.

70. Defendants Luna, Luna, Barger, Hahn, Solis, Mitchell, and Horvath are responsible for the constitutional violations set forth in averment 69 and for the violations committed by the deputy sheriff defendants, because they set the

1  policies and accepted the customs of the LASD, among which were

2  unconstitutional, brutalization of jail prisoners, and plaintiff herein was subjected

3  to such brutalization and thuggery.

4                                **COUNT TWO**

5  (Against Defendants Luna, Barger, Hahn, Solis, Mitchell, and Horvath, Under Sec.
                                1983, *Monell*)

6

7        71. "[When] the complaint plausibly alleges a policy, custom, or practice

8  leading to that violation[, s]*ee Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct.

   1937, 173 L.Ed.2d 868 (2009)[,] [and] Plaintiffs' allegations amount to . . . more
9
   than an 'isolated or sporadic incident[ ]' that . . . forms the basis f *Monell* liability
10
   for an improper custom. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)
11
   [prosecuted by plaintiff's counsel herein]." *Saved Magazine v. Spokane Police*
12
   *Dep't*, 19 F.4th 1193, 1201 (9th Cir. 2001).
13
        72. Defendants Luna, Barger, Hahn, Solis, Mitchell, and Horvath are liable
14
   to plaintiff because they had and have, and foster, policies, practices, procedures,
15
   and customs of First, Fourth, Eighth, and Fourteenth Amendment violations by
16
   members of LASD, which policies, in violation of the these Amendments, were
17
   the moving forces that caused the violation of the plaintiff's rights, as alleged
18
   herein, and, also they are supervisorial defendants who are liable because there is a
19
   custom of improperly indemnifying, and of conspiring to indemnify, LASD
20
   officers for punitive damages assessed against those deputies by juries in civil
21
   rights cases, or settling those cases to avoid having to decide on whether or not to
22
   make such indemnifications, because that practice was a moving force that caused
23
   the violations of the plaintiff's rights as alleged herein.
24
                                **COUNT THREE**
25    (Against Defendants Luna, Barger, Hahn, Solis, Mitchell, and Horvath: *Monell*)

26        73. The conditions of confinement at the Jail are horrific and

27  unconstitutional, and include, but are not limited to, the following:

28

74. Failure to properly discipline, restrict, and control employees, including defendants Palencia, Pineda, Palacios, and Martinez, and the other deputies whose names are set forth in aver. 55.

75. Failing to take adequate precautions in the hiring, promoting, and retention of police personnel, including defendant deputies herein.

76. Failing to forward to the office of the District Attorney of Los Angeles County evidence of criminal acts committed by Sheriff personnel;

77. Failing to establish and/or assure the functioning of a bona fide and meaningful departmental system for dealing with complaints/grievances of police misconduct, but instead failing to respond to such complaints, or responding to such complaints with misused bureaucratic power and official denials calculated to mislead the public. This conduct constitutes gross negligence under state law;

78. Bad plumbing, with broken toilets in his numerous cells, over-flowing with urine and feces, all over the floors in his cells, which sometimes went on and destroyed his property and belongings, and which he had to clean-up himself;

79. Roaches were all over his cells that he lived in, which he had to kill, and being woken up in the middle of the night, with roaches in his bed, crawling on him.

80. Failing to remedy the unconstitutional conditions of confinement at the Jail.

81. Failing to demolish the Jail.[2]

---

[2] The physical conditions of confinement also include all of those conditions mentioned and evaluated as being unsatisfactory in the numerous Sybil Brand Commission for Institutional Inspections, all attached hereto as Exhibit 1, and the Los Angeles Times articles attached hereto as Exhibit 4, and all of whose contents are incorporated herein by this reference to them.

82. Defendants Luna, Barger, Hahn, Solis, Mitchell, and Horvath. all as official capacity defendants, are liable to plaintiff for all wrongs alleged in this pleading, pursuant to *Monell*, because they ratified, condoned, approved of, acquiesced in, authorized, tolerated, and were the moving forces behind the institutionalized practices, and all of the misconduct alleged herein. *See* Exhibits 1 & 4 hereto, whose contents are incorporated in this averment by this reference.

## CLASS ACTION ALLEGATIONS

83. Plaintiff is a member of four classes, whose defining characteristics are that they are persons who were subjected to First, Fourth, Eighth, and Fourteenth Amendment violations, at the hands of defendants, at the Los Angeles County Mens' Central Jail, by virtue of: (1) being deprived of the right to petition government, by filing jail administrative grievances; (2) being subjected to unreasonable force at the hands of deputy sheriffs, while in custody and/or in the Jail; (3) being subjected to unreasonable force at the hands of deputy sheriffs; and (4) being subjected to physical conditions at the Jail that are deplorable, inhumane, unconstitutional, and "horrific" and that have been for many years and are unconstitutional.

84. Classes (1), (2), and (3) each contain approximately at least 1,000 people, and class (4) contains at least 100,000 people, so that the classes each are so numerous so that joinder of all members is impracticable.

85. There are only common questions of fact and of law with respect to all class members of each class.

86. The claims made by the representative party of each class, plaintiff, are typical of the claims of each class member.

87. The representative of the class, plaintiff, more than fairly, vigorously, and zealously will represent and adequately protect the interests of all class members, both themselves and through their very zealous attorney.

88. Prosecution of separate actions by individual class members would create a risk of inconsistent and/or varying adjudications with respect to class members, which would establish incompatible standards for parties opposing the classes.

89. Defendants have acted and will continue to act on grounds generally applicable to every class member in both classes, and the class questions not only predominate but are the only questions that exist, and this action is the far superior manner to other available methods for fairly and efficiently adjudicating the controversies.

90. The class members' interests in individually controlling the prosecution or defense in separate actions do not exist, and there are no anticipated difficulties in managing this class action, especially as to identification of the amount of damages, identification of class members, and providing actual notice to virtually all class members.

91. Therefore, this action is maintainable under Fed. R. Civ. P. Rule 23(a), & 23(b)(1)(A),(B)(1), (2), and (3).

92. Although there would appear to be no notice requirement as to (B)(1) & (2) classes, the nature of the notice to be provided to class members would be decided by the court.

93. The definitions of the four classes are as follows: (1) all Los Angeles County Mens' Central Jail prisoners during the class period, Dec. 2019 to the date this action goes to trial, who were subjected to excessive force by deputy sheriffs; (2) all persons during the class period Dec. 2021 to the date this action goes to trial, who were subjected to excessive force by deputy sheriffs; (3) all Los Angeles County Mens' Central Jail Prisoners during the class period, Dec. 2019 to the date this action goes to trial, who were subjected to unconstitutional conditions of confinement; and (4) all Los Angeles County Mens' Central Jail Prisoners during

1  the class period, Dec. 2019 to the date this action goes to trial, who were subjected

2  to unconstitutional deprivation of their right to petition government by reason of

3  their not being avail themselves of a working and honest jail grievance process.

4       **WHEREFORE**, plaintiff requests relief on behalf of himself and on behalf

5  of each class member against each defendant as follows:

6       1.  Compensatory damages $1,000,000;

7       2.  Punitive damages on all non-*Monell* claims, in sums to be determined by

8  a jury, and as a percentage of the net worth of each defendant, in sums sufficient to

9  deter future misconduct, and not less than $10,000,000 per defendant;

10       4. The costs of action and interest;

11       5.  Attorneys' fees; and,

12       6.  Such other relief as is just and proper.

13                          **JURY DEMAND**

14  Plaintiff demands trial by jury of all issues.

15

16                      **YAGMAN + REICHMANN, LLP**

17                        By:  /s/  Stephen Yagman

18                            **STEPHEN YAGMAN**

19

20

21

22

23

24

25

26

27

28