UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KORRELL SANTANA COLE,<br><br>    Plaintiff,<br><br>v.<br><br>LOS ANGELES COUNTY et al.,<br><br>    Defendants. | Case No. 2:23-cv-10392-SB-PD<br><br>ORDER ADOPTING, AS MODIFIED, FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE [DKT. NO. 154] |

    Defendants Robert Luna, Clayton Stelter, Andrew Palencia, Brian Pineda, and Sergio Palacios moved for terminating or preclusion sanctions under Rule 37 of the Federal Rules of Civil Procedure for Plaintiff Korrell Cole's repeated obstruction and defiance of discovery orders. Dkt. No. 140. In her Report and Recommendation (R&R), Magistrate Judge Patricia Donahue recommends evidence-preclusion sanctions barring Plaintiff from testifying or introducing his interrogatory responses at any pretrial motion or trial. Plaintiff objects, contending that the proposed sanctions would effectively dismiss his case. The Court agrees but concludes that terminating sanctions are warranted.

I.

    Pursuant to 28 U.S.C. § 636, the Court has reviewed de novo all relevant records in this case, including the Second Amended Complaint, Judge Donahue's prior discovery orders, the parties' briefing on the Rule 37 motion, the R&R, the objections, and the response.

    Plaintiff's counsel, Stephen Yagman, filed two objections to the R&R. First, he filed a "partial response/objection," asserting that the R&R should be rejected because the recommended sanction amounts to a terminating sanction but stating

1

that he needed an unspecified amount of additional time to fully object due to his medical condition. Dkt. No. 157. Then, more than a week after the objection deadline, Plaintiff filed a "further, complete objection" claiming that the R&R is "fatally riddled with mistakes of fact and legal errors and is not properly a basis for prohibiting plaintiff's testimony" without considering lesser sanctions, and objecting to specific portions of the R&R. Dkt. No. 162 at 5–7. Defendants move to strike the supplemental objection as untimely.

To the extent Plaintiff's partial objection constituted a request for an extension, the request is denied as moot in light of the subsequent "complete" filing. The Court denies Defendants' request to strike and will address the merits of Plaintiff's objections.

## II.

The R&R includes a detailed account of the relevant history of the case, with extensive citations to the record. Plaintiff makes conclusory objections to various statements by Judge Donahue that he contends were factually erroneous. Unlike the R&R, Plaintiff's objection is entirely devoid of record citations. He has not shown that Judge Donahue erred in any of her factual descriptions or findings, which the Court adopts in full following its de novo review. In particular, the R&R accurately reflects Yagman's history of obstruction and delay. After assuring the Court that he would pursue a "zealous and speedy prosecution" of the case (Dkt. No. 17 at 2), Yagman willfully refused to participate in discovery, requiring Defendants to seek—and the Court to grant—several lengthy continuances that ultimately pushed the trial date back from March to December of 2025. Dkt. Nos. 77, 115, 139, 155. The R&R focuses on two areas of obstruction and noncompliance: Plaintiff's deposition and interrogatory responses.

### A.

Over the course of a full year, Yagman has prevented Defendants from being able to conduct a meaningful deposition of Plaintiff. The relevant sequence of events is described below.

(1) After Defendants noticed Plaintiff's deposition for the only date in October 2024 that could be accommodated by the California Department of Corrections and Rehabilitation (CDCR), Yagman waited over two weeks to object that he was unavailable, just five days before the noticed date;

(2) When Defendants rescheduled the deposition to a date Yagman had previously identified as available, he responded with a host of objections, including (among others) that the deposition was not proportional to the needs of the case, that Defendants could only depose Plaintiff for 3 1/2 hours (leaving him with the other 3 1/2 hours for questioning), and that he would not complete the background security application required by the state prison;

(3) After his objections were overruled (at a court-ordered conference Yagman failed to attend), Yagman appeared for the deposition on November 13, read several pages of objections into the record, informed Defendants that he would suspend the deposition midday due to a prior commitment, and then repeatedly objected to defense counsel's questions and advised Plaintiff not to answer until they suspended the deposition;[1]

(4) Yagman refused to agree to resume the deposition on the only date CDCR had available before the relevant deadline, insisting that Defendants "would not be able to take Plaintiff's deposition for a long time";

(5) After Defendants agreed to Yagman's request that the deposition be taken in person, he waited weeks to respond to their attempts to arrange the logistics before telling them that they "no longer had an

---

[1] Judge Donahue found that "the scheduling of the November 2024 deposition reflects both parties' lack of cooperation and professionalism" because Defendants did not inform her at the November 8 discovery conference—when Yagman failed to appear—that his office had told defense counsel he was unavailable after Judge Donahue set the conference. Dkt. No. 154 at 3, 17. Based on the conduct of defense counsel (who were later replaced), Judge Donahue found that Plaintiff's obstruction at the aborted November 13 deposition was caused in part by circumstances outside his control and therefore did not base her finding of willfulness on that misconduct. *Id*. at 17–18. Defendants dispute that Yagman's office informed him of his unavailability on November 8; they claim that a caller who refused to identify himself stated that Yagman would not attend a meet-and-confer on November 8 and refused to provide further information, and that Defendants' subsequent calls to Yagman's office were not accepted. Even accepting Yagman's version of events, informing defense counsel of his unavailability did not excuse his nonappearance at the discovery conference.

3

  agreement to conduct Plaintiff's deposition" and insisting on new and facially unreasonable conditions;

(6)  When Defendants offered a counterproposal, attempting to accommodate some of his demands, he rejected it in full; and

(7)  After Judge Donahue granted Defendants' motion to compel the deposition and the deposition was set on a date Yagman's office had confirmed was available, he caused it to be canceled by refusing to submit the security form required by CDCR, claiming that Judge Donahue had not specifically ordered him to submit the form.

Yagman now maintains that he will not fill out the form unless ordered to do so by the Ninth Circuit, and Plaintiff's deposition (apart from the aborted deposition on November 13, 2024, at which Plaintiff refused to answer questions on Yagman's advice) still has not taken place.

B.

  Yagman has similarly violated his obligations to respond to written discovery: (1) he served a single document containing blanket objections to the written discovery, including interrogatories, document requests, and requests for admission; (2) he did not comply with Judge Donahue's order following the November 8 conference to provide complete and properly verified written discovery responses by November 12; (3) Judge Donahue granted Defendants' motion to compel and ordered Plaintiff to provide verified, substantive responses to Defendants' interrogatories by April 18, 2025, but Defendants did not receive responses until April 22 (more than nine months after discovery began); and (4) the responses were signed by Yagman but not dated, and Plaintiff's verifications were signed in November 2024—five months earlier. Yagman represented that he had mailed the written discovery to Plaintiff for him to complete, received Plaintiff's handwritten responses in November 2024, and then held them "at the ready, until such time [as he] might be required to serve them."[2] He claims that he had

---

[2] Plaintiff objects that the interrogatories were not properly served on him. Dkt. No. 162 ¶ 7. He did not raise this argument in opposition to the motion, and the Court does not consider new arguments raised for the first time in R&R objections. *See United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000) (district court not required to consider evidence presented for the first time in an objection to an R&R). Moreover, his contention that the interrogatories "were a nullity"

4

Plaintiff's handwritten responses transcribed and then attached Plaintiff's verifications to the typed document—which Plaintiff never saw. Judge Donahue correctly observed that this approach renders the interrogatory responses unreliable. Indeed, in his objection to the R&R, Yagman for the first time attaches the handwritten responses he received from Plaintiff, and, as Defendants point out, they contain substantive discrepancies from the typed responses Yagman produced.

### C.

In sum, the record amply supports a finding that Yagman—on behalf of Plaintiff—has engaged in willful obstruction and delay in violation of his professional obligations and Judge Donahue's orders. Plaintiff's factual objections to the R&R are overruled.

### III.

Judge Donahue found that while Plaintiff's counsel's violations were willful, the proposed sanction—generally precluding Plaintiff from testifying or introducing his interrogatory responses at trial—was an appropriate less drastic sanction than termination. Plaintiff objects that "prohibiting plaintiff from testifying is, in reality, a terminating sanction, rendering the R&R inconsistent, illogical, and contrary to law[.]" Dkt. No. 157 ¶ 2. For the reasons described below, the Court adopts the factual and legal findings in the R&R except with respect to the analysis of the availability of less drastic alternative sanctions, which the Court finds requires dismissal here.

### A.

Where, as here, a party's discovery misconduct is willful or in bad faith, courts may issue terminating sanctions. *United States v. Kahaluu Const. Co.*, 857 F.2d 600, 603 (9th Cir. 1988). Courts must consider five factors when evaluating a terminating sanction: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their

---

contradicts his acknowledgment that interrogatory responses were required. *See* Dkt. No. 162 at 6 ("Plaintiff has substantially complied [by] providing verified . . . responses."). In any event, Judge Donahue overruled Plaintiff's objections to service when she granted the motion to compel.

merits; and (5) the availability of less drastic sanctions." *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007). Dismissal is appropriate where "at least four factors support dismissal, or where at least three factors strongly support dismissal." *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 788 (9th Cir. 2011). "The district court need not exhaust every sanction short of dismissal before finally dismissing a case, but must explore possible and meaningful alternatives." *Henderson v. Duncan*, 779 F.2d 1421, 1424 (9th Cir. 1986). Moreover, "[u]nder egregious circumstances it is unnecessary (although still helpful) for a district court to discuss why alternatives to dismissal are infeasible." *Dreith*, 648 F.3d at 788–89 (cleaned up).

A proposed "less drastic sanction" may nevertheless be the "functional equivalent" of a terminating sanction if it prevents the offending party from supporting or opposing claims or defenses or precludes any evidence as to a prima facie element of a claim. *In re Tan*, No. ADV. 00-04199, 2007 WL 7541007, at *6 n.19 (B.A.P. 9th Cir. Sept. 28, 2007). If the only feasible alternative sanction to dismissal is the functional equivalent of a terminating sanction, this factor weighs in favor of termination. *See Relman Colfax PLLC v. Fair Hous. Council of San Fernando Valley*, No. 2:19-CV-08612-PSG, 2020 WL 7643135, at *8 (C.D. Cal. Dec. 1, 2020) (recommending termination where "any issue or evidentiary sanction that the Court might impose would effectively be equivalent to— not less drastic than—terminating sanctions"), *report and recommendation adopted,* 2021 WL 945244 (C.D. Cal. Feb. 18, 2021); *Quinn v. Dermatech Rsch., LLC*, No. 2:19-CV-07339-JFW, 2020 WL 2475083, at *7 n.8 (C.D. Cal. Mar. 18, 2020) (recommending termination where alternative sanction "prohibiting Plaintiffs from testifying/offering any evidence against Defendant" was the "functional equivalent of terminating sanctions"), *report and recommendation adopted,* 2020 WL 2478786 (C.D. Cal. Mar. 27, 2020).

B.

Judge Donahue found that the first three factors (the public's interest in expeditious resolution, the court's need to manage its docket, and the risk of prejudice to Defendants) favored termination and that the fourth factor (the public policy in favor of resolving cases on the merits) did not meaningfully weigh against termination. The Court agrees and adopts the R&R as to those factors.[3]

---

[3] The Ninth Circuit has stated that the fourth factor "always weighs against dismissal." *Dreith*, 648 F.3d at 788. However, "this factor lends little support to a party whose responsibility it is to move a case toward disposition on the merits but

6

Indeed, although Judge Donahue did not address how strongly the first three factors weigh in favor of termination, they are sufficiently weighty that the Court could find dismissal warranted based on them alone. *Dreith*, 648 F.3d at 788. Nevertheless, the Court, like Judge Donahue, considers the availability of less drastic sanctions.

As to that final factor, Judge Donahue considered her prior discovery orders and other "considerable efforts" to get Plaintiff to comply with his discovery obligations and concluded that further orders to compel were not viable alternatives. Dkt. No. 154 at 25. Despite this conclusion, which arguably satisfies the obligation to consider less drastic alternatives, Judge Donahue found that evidence preclusion rather than termination was appropriate. *Id.* at 26. But her recommended sanction—precluding Plaintiff from testifying at any pretrial or trial proceeding or introducing his interrogatory responses—is the functional equivalent of a terminating sanction. Plaintiff asserts claims for (1) excessive force and retaliation under 42 U.S.C. § 1983, and (2) *Monell* liability based on the unsanitary conditions of the jail. Dkt. No. 56; Dkt. No. 116 at 2. His testimony is necessary to establish both claims. Indeed, Yagman concedes that he has no evidence to contest the facts offered by Defendants in support of their summary judgment motion and seeks additional time to submit a declaration of Plaintiff for that purpose. Dkt. No. 168 at 3–4. This declaration would fall directly within the scope of Judge Donahue's proposed preclusion order, and Plaintiff does not suggest—much less show—that he could survive summary judgment without it.[4]

---

whose conduct impedes progress in that direction." *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1228 (9th Cir. 2006) (cleaned up). Judge Donahue found that "this fourth factor, although generally weighing against termination, 'lends little support' to Plaintiff" because of his delay, such that it "does not weigh for or against termination." Dkt. No. 154 at 24. The Court construes this as a finding that the fourth factor does not *meaningfully* weigh against termination and adopts it as such.

[4] In opposition to the summary judgment motion, Yagman vaguely references "documentary, self-authenticating government documents," including video of the incident and jail conditions, but does not suggest that this evidence would allow his client to survive summary judgment without Plaintiff's declaration about the facts. Dkt. No. 168 at 5. Nor does he show that this evidence was identified and produced in discovery as required. *See* Dkt. No. 172 at 4 (objecting to continuance request because Plaintiff did not produce any of the vaguely identified documents in discovery or reference them in his interrogatory responses).

But to say that Judge Donahue's recommended sanction is the functional equivalent of a terminating sanction is not to say that the thrust of the recommendation is wrong. On the contrary, Judge Donahue's analysis persuasively leads to termination. *See. e.g.*, *Relman*, 2020 WL 7643135, at *8; *Quinn*, 2020 WL 2475083, at *7 n.8.

Finally, although there is no requirement that the court "exhaust every sanction short of dismissal before finally dismissing a case," *Henderson*, 779 F.2d at 1424, other alternative sanctions likely would not induce Plaintiff's compliance. Monetary sanctions against Plaintiff are not feasible given his financial status. *See* Dkt. No. 7 (permitting Plaintiff, who is incarcerated, to proceed with partial payment of filing fee); *Relman*, 2020 WL 7643135, at *8 & n.17 (concluding monetary sanctions not feasible given defendant's representation that she lived off welfare). There is also no reason to expect that a monetary sanction would incentivize Yagman to allow Plaintiff's deposition to proceed, especially given his continued privacy objections to completing the CDCR background forms required for a remote deposition. *See, e.g.*, Dkt. No. 144 at 2 (asserting that Yagman may not be forced to give up "his personal right to privacy"). Nor is there reason to believe, as Judge Donahue found, that Yagman would comply with lesser sanctions, given his repeated efforts to obstruct discovery and willful violations of prior orders. Dkt. No. 154 at 25. And even if Yagman were to waive his privacy objection and comply—a doubtful premise on this record—the delay and prejudice would be significant: the CMO (which has been extended multiple times already) would need to be extended for an indeterminate period (given Yagman's uncertain medical condition), and Defendants would have to file a new summary judgment motion.

C.

Because less drastic sanctions are not feasible, termination is the appropriate sanction in this case. *See Anheuser-Busch, Inc. v. Nat. Beverage Distributors*, 69 F.3d 337, 352 (9th Cir. 1995) (affirming terminating sanction and dismissal with prejudice where offending party's "pattern of deception and discovery abuse made it impossible for the district court to conduct [the action] with any reasonable assurance that the truth would be available"). Thus, the action is dismissed in its entirety with prejudice.

9

A final judgment will be issued separately.


Date: November 20, 2025                              _____
                                                    Stanley Blumenfeld, Jr.
                                                    United States District Judge